PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**February 19, 2010**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

RONNIE L. REGISTER
CARRIE L. REGISTER,

Debtors.

HIGHLINE CAPITAL CORPORATION,

Plaintiff,

v.

RONNIE L. REGISTER
CARRIE L. REGISTER,

Defendants.

Case No. 08-44241

Adversary No. 08-04138

**MEMORANDUM DECISION**

**NOT FOR PUBLICATION**

Trial was held in this matter on January 6, 2010, with closing arguments held on January 22, 2010. Plaintiff Highline Capital Corporation (Highline), in accordance with its complaint, seeks to have the debt owed by Defendants Ronnie and Carrie Register (Debtors) declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). At the conclusion of the trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In November, 2004, Debtor Ronnie Register left his employment with Taco Time. On December 9, 2004, the Debtors completed a franchise application to open a Figaro's Pizza restaurant

MEMORANDUM DECISION - 1

Case 08-04138-PBS    Doc 33    Filed 02/19/10    Ent. 02/19/10 09:47:03    Pg. 1 of 9

in Battle Ground, Washington. On December 30, 2004, the Debtors paid $34,500 in franchise fees to Figaro's Italian Pizza, Inc. (Figaro's). Figaro's provided the Debtors with a list of potential financial lenders for business loans. From this list, the Debtors contacted Gary Barnett (Barnett) of Emerald Commercial for the purpose of obtaining a business loan to purchase the assets necessary to operate the franchise pizza business.

On January 19, 2005, the Debtors entered into a residential real estate purchase and sale agreement for the purchase of a new home to be constructed in Battle Ground. The residential contract was for a purchase price of $237,255 and conditioned on the sale of the Debtors' current home in Sedro Wooley, Washington.

On January 29, 2005, the Debtors personally completed a handwritten application for franchise financing and financial statement that was submitted to Barnett. This financial statement listed a joint annual income of $78,800 for the year ending 2003, and a net worth of $150,000. On February 5, 2005, the Debtors completed a revised personal financial statement. This handwritten financial statement also indicated a net worth of $150,000. Each of these financial statements listed real estate with a value of $157,000 and mortgage balance of $79,000, with payments of approximately $1,182 per month.

Barnett subsequently prepared a typed financial statement for the Debtors dated February 5, 2005, indicating a total net worth for the Debtors of $211,432. The difference between the two February 5th financial statements is an increase in the amount held in checking from $2,000 on the handwritten statement, to $58,000 on the typed statement and the addition of $5,232 for the cash surrender value-life-insurance. This loan was denied, although the Debtors testified that the denial was never communicated to them.

On February 11, 2005, the Debtors sold their home in Sedro Wooley, and moved into the home of Carrie Register's parents located in Longview, Washington. On February 14, 2005, the Debtors paid an additional earnest money deposit of $4,200 for the Battle Ground home and removed the contingency regarding the sale of their home in Sedro Wooley.

MEMORANDUM DECISION - 2

On March 17, 2005, the Debtors filed a certificate of incorporation for RCRBG Corp, the entity through which they would be operating their Figaro's Pizza franchise. On April 29, 2005, Ronnie Register's father passed away in the State of Florida.

In March, 2005, the Debtors allege that Barnett orally informed them that their business financing had been approved. This testimony is supported by the fact that on April 6, 2005, the Debtors paid a deposit for business equipment. A bill of sale was signed to transfer the equipment for a price of $37,000. In April, 2005, the Debtors executed a Lease Agreement at Padden Parkway Market Center for their Figaro's franchise. A deposit of $5,531 was paid to the landlord on April 13, 2005. A personal guaranty of the lease obligation was also executed at that time.

On June 6, 2005, the Debtors executed an updated financial statement (June 2005 Financial Statement) prepared by Barnett. The June 2005 Financial Statement deleted any reference to real estate owned and real estate mortgages payable. Listed under the line entry for "Accounts, loans & notes receivable" was the sum of $280,000, followed by an asterisk, without further explanation. Presumably this referenced the expected inheritance from Mr. Register's father. The June 2005 Financial Statement listed annual income of $80,000.

On June 9, 2005, Barnett sent a fax to Americorp Financial, LLC, requesting that the loan amount request be increased from $150,000 to $160,000. The fax coversheet also advised that the Debtors had sold their home in Sedro Wooley and were currently renting a home from Ronnie Register's parents for $500 per month, and that Mr. Register was to receive an inheritance of $280,000 from his father within 30 days. Highline asserts that the loan was approved on June 13, 2005. On June 28, 2005, a finance agreement was entered into between Americorp Financial, LLC, as lender, and RCRBG Corp, as borrower, for the principal amount of $149,439.88. On that same date, the Debtors executed a personal guaranty for the business loan.

On August 24, 2005, the Debtors closed on the purchase of the new home in Battle Ground for a purchase price of $301,905.91. On September 2, 2005, Americorp Financial, LLC, assigned the business loan and personal guaranty to Highline for the sum of $153,901.21.

MEMORANDUM DECISION - 3

On June 15, 2005, the Debtors made an initial down payment on the loan of $5,284.17. Through June, 2008, the Debtors made seven payments of $1,400 per month, six payments of $1,900 per month, 21 payments of $3,034.17, and three payments of $1,820.50, for a total of $95,663.24. The Debtor's Figaro's Pizza franchise closed on July 12, 2008.

The Debtors filed a Chapter 7 bankruptcy petition on August 27, 2008. On November 24, 2008, Highline filed a complaint objecting to the Debtors' discharge under § 523(a)(2) and § 727(a)(4). At the commencement of trial, Highline indicated that it was not pursuing the § 727(a)(4) claim. As no evidence was presented to support the § 727(a)(4) claim, the Court concludes that it should be denied.

11 U.S.C. § 523(a)(2)(B) excepts from discharge a debt for money, property, services or credit to the extent obtained by

> (B) use of a statement in writing –
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

A creditor must prove the elements of § 523(a)(2)(B) by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

The Debtors do not appear to dispute that the debt at issue was obtained by use of a statement in writing (the June 2005 Financial Statement), that contained representations of fact regarding their financial condition, and that they are insiders of the corporation. In closing, the Debtors' counsel indicated that the issues in dispute are only whether Highline has established by the preponderance of the evidence that the representations were made by the Debtors with the requisite intent to deceive upon which Highline reasonably relied.

A. Intent to Deceive

Under § 523(a)(2)(B), "fraudulent misrepresentation is established by showing 'either actual knowledge of the falsity of a statement, or reckless disregard for its truth . . . .'" Gertsch v. Johnson & Johnson, Finance Corp. (In re Gertsch), 237 B.R. 160, 167 (9th Cir. BAP 1999) (quoting Houtman v.

MEMORANDUM DECISION - 4

Mann (In re Houtman), 568 F.2d 651, 656 (9th Cir. 1978), overruled on other grounds by Grogan, 498 U.S. at 284-85 n.11)). Thus, intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth. Gertsch, 237 B.R. at 167-68.

As evidence of intent to deceive, Highline first argues that the Debtors knew they were not presently earning $80,000 per year when they executed the June 2005 Financial Statement. Ronnie Register testified that he understood "annual income" to refer to their annual income for the last full calendar year, or 2004, which the evidence supports as being approximately $80,000. The Court finds the Debtors' explanation to be credible, particularly because the financial statement itself is ambiguous. Section 4 is titled "Annual Income for Year Ended," and the year is left blank. No explanation was provided as to why the blank on the June 2005 Financial Statement prepared by Barnett was not completed to specify the year upon which the annual income numbers were based. As the Debtors first completed a financial statement in January, 2005, it was reasonable for them to utilize their annual income from the last full calendar year. Although the Debtors should have revised this figure on the June 2005 Financial Statement, particularly since Mr. Register was no longer employed, the Debtors disclosed that Ronnie Register's employment was to be operation of the pizza restaurant in the Application for Franchise Financing prepared on January 29, 2005, and submitted to Barnett for the purpose of obtaining financing. In this application, the Debtors also clearly disclosed that only Carrie Register was to keep her existing employment with an annual income of $48,800.

The Court finds that neither of the Debtors are sophisticated business persons. Although Ronnie Register had experience with food service businesses, there is no evidence that he had any experience in applying for a business loan. They were not represented by counsel. Moreover, the handwritten financial statements prepared by the Debtors dated January 29, 2005 (Defendants' Exhibit 13), and February 5, 2005 (Defendants' Exhibit 17), indicate that the Debtors were relying on their annual income for prior years.

The lease guaranty was not disclosed on the June 2005 Financial Statement, however, it is clear from the string of emails submitted into evidence that Highline was aware of the lease as it

attempted to secure a landlord waiver prior to entering into the finance agreement. Highline needed to only inquire of either the Debtors or the landlord as to whether it was guaranteed. Additionally, the Debtors' testimony is credible that they did not understand that it should be listed as a "contingent liability," negating any intent on their part to deceive.

Highline also alleges that the Debtors knew they were under a contract to purchase a new home at the time the June 2005 Financial Statement was prepared and that this information should have been disclosed. Ronnie Register testified that he informed Barnett of their intent to purchase a new home and that Barnett advised them that this information did not need to be disclosed because the sale had not yet closed and they currently had no existing mortgage debt. The Court finds the Debtors' explanation credible, particularly as the financial statement itself could reasonably be interpreted by an unsophisticated borrower to not require disclosure. Although the Debtors entered into a contract for the purchase of the new home in January, 2005, the purchase did not close for several months after the June 2005 Financial Statement was prepared. When completed, the June 2005 Financial Statement was technically accurate in that the Debtors did not own any real property and had no mortgage indebtedness. While the home contract could be characterized as a contingent liability, as indicated above, the Debtors were unsophisticated, unrepresented and did not understand the term contingent liability. Their testimony that Barnett was aware of the home purchase, who they believed was an agent of the lender, is also credible.

Contrary to the argument of Highline's counsel, the Court does not find the statement made in Ronnie Register's deposition testimony that he did not "know if [he] told Gary or not" to be contradictory. (Ronnie Register's deposition p.48, line 23). Ronnie Register testified that this statement was made solely in response to a question asking whether he informed Barnett about the closing of the home sale and ensuing mortgage in August, 2005. Based on the context of the series of questions asked at that time, the Court finds Ronnie Register's explanation to be credible.

The Debtors maintain that throughout the loan process, they understood Barnett to be an agent of the lender, not a broker shopping their loan. Although Barnett was not an agent of Highline, the

MEMORANDUM DECISION - 6

uncontradicted evidence indicates that Barnett held himself out as an agent of the original lender. As an assignee, knowledge of the assignor would be imputed to Highline. See <u>New Falls Corp. v. Boyajian (In re Boyajian)</u>, 564 F.3d 1088, 1091 (9th Cir. 2009) (holding that an assignee steps into the shoes of the assignor allowing it to bring a nondischargeability complaint).

The finance agreement entered into June 28, 2005, was between RCRBG Corp. as debtor, and Americorp Financial, LLC., as the secured party. The same is true of the personal guaranty signed on the same date. This finance agreement was assigned by Americorp Financial, LLC to Highline on September 2, 2005. Subsequently, the Debtors received a letter dated September 22, 2005, from Barnett as Vice President of Sales for Americorp Financial, LLC, thanking them for their business. This evidence supports Ronnie Register's testimony that Barnett held himself out as an agent of the original lender. As his testimony is credible that he disclosed the purchase of the Battle Ground house to Barnett prior to preparing the June 2005 Financial Statement, there cannot be found an intent to deceive, as actual disclosure is found to have been made.

It is probable that several misstatements made in the loan process originated with Barnett, rather than the Debtors. For instance, Highline focuses on a fax memo from Gary Barnett to Steve Sambor dated June 9, 2005, as evidence of the Debtors' intent to deceive. There is no persuasive evidence, however, that the statements made by Barnett in this fax are true or originated with the Debtors. For example, Barnett indicated that the Debtors were renting a home owned by Ronnie Register's parents for $500 dollars a month, but it is undisputed that the Debtors were living with Carrie Register's parents and no rent was ever paid. Barnett also represented that Ronnie Register would be receiving an inheritance within 30 days, while Ronnie Register testified that he informed Barnett that the funds would be paid within six months to a year. Finally, Barnett apparently unilaterally increased the amount of the loan to $160,000, which the Debtors deny ever requesting. The same is true of the typed February 5, 2005 Financial Statement. It is unrefuted that this statement was prepared by Barnett. There is no explanation for the increase in funds held in checking accounts on this statement by over $50,000, and the Debtors deny ever making this representation or signing

MEMORANDUM DECISION - 7

this document. The similarities between the Debtors' signatures on this financial statement and the handwritten one prepared by the Debtors, lend support to the Debtors' testimony that they did not sign this document. Lastly, Barnett appears to have been subsequently dropped by Figaro's as a contact for franchise lending due to similar disputes concerning inaccuracies, lending support to the Debtors' testimony that it was not their intent to deceive.

As a final matter, also weighing against any intent to deceive based on the June 2005 Financial Statement is the Debtors' testimony that they believed that their financing was approved in March of 2005. The Debtors' testified that Barnett informed them that the loan was approved based upon the earlier financial statements. The Debtors' subsequent actions in purchasing equipment and entering into a premises lease are consistent with this testimony.

Highline has failed to establish by a preponderance of the evidence intent to deceive on the part of the Debtors based on the June 2005 Financial Statement.

B.  Reliance on the Financial Statements

The Debtors contend that Highline has not established that it reasonably relied on alleged misrepresentations in the June 2005 Financial Statement. The Court agrees.

As the Debtors are found to have disclosed their current income (in the Application for Franchise Financing) and upcoming home purchase to the lender through Barnett, Highline cannot establish that it relied on any misstatements regarding these facts in the June 2005 Financial Statement.

Even if such information had not been disclosed, numerous "red flags" appear in this case that should have alerted the lender that further investigation should have been conducted. See BancBoston Mortgage Corp. v. Ledford (In re Ledford), 970 F.2d 1556, 1560 (6th Cir. 1992). Although the reasonableness requirement is a fairly "low hurdle" for a creditor to meet in this circuit, a creditor is not entitled to rely upon an obviously false representation. See, e.g. Deutsche Fin. Servs. Corp. v. Osborne (In re Osborne), 257 B.R. 14, 21-22 (Bankr. C.D. Cal. 2000). Examples of such "red flags" in this case are the asterisk appearing on the June 2005 Financial Statement after the $280,000 without

MEMORANDUM DECISION - 8

further explanation; the blank appearing after the annual income section, which should have clarified for what year the income was being stated; the complete lack of any expenses listed for mortgage or rental payments; the lack of the disclosure of lease obligations when the lender was aware of the nature of the proposed franchise and actively negotiated with the landlord concerning a waiver. Taken together, these discrepancies would have alerted an ordinarily prudent lender to the possibility that the representations were contradictory so that it could not reasonably rely on the representations made without conducting at least some minimal investigation.

Based on the above, Highline has not established an intent to deceive or reasonable reliance. Accordingly, Highline has not established each of the requisite elements for a finding of nondischargeability under § 523(a)(2)(B).

_____
Paul B. Snyder
United States Bankruptcy Judge
(Dated as of Entered on Docket date above.)